E. C. OLSEN, a Utah Corporation,
Plaintiff and Respondent,

v.

Alice S. CUMMINGS, Trustee, Lorenzo J. Cummings, Jr., Trustee, David S. Cummings, Trustee, Roger L. Cummings, Trustee, Stephen A. Cummings, Trustee of the Cummings Trust, Defendants and Appellants.

No. 14755.

Supreme Court of Utah.

June 14, 1977.

Ronald C. Barker, Salt Lake City, for defendants and appellants.

J. Craig Carman, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Before us is a denial of a motion to vacate a default judgment. We reverse, grant the motion and remand for further proceedings. Costs to defendants.

Plaintiff and defendant trust entered into a sales transaction for the purchase and installation of a sprinkling irrigation system. Defendant paid $21,500 as a down payment and arranged financing for an additional sum of $65,372.30, plus financing charges. Plaintiff claimed an additional sum of $7,896.20 plus interest and initiated this action to collect this indebtedness.

In its complaint, plaintiff alleged that Roger L. Cummings, in his capacity as agent for the Cummings Trust, entered into a written contract to purchase certain goods. The individual trustees were named as defendants. Since all defendants are named Cummings, reference hereinafter will be to their given names. Service of the summons and complaint was made March 24, 1976, only on Alice. Thereafter, counsel was employed by defendants.

Because there was a dispute as to the goods delivered and costs incurred, plaintiff's counsel granted an extension of an unspecified length of time to defense counsel to answer the complaint. Thereafter a meeting was held on April 16, 1976, to discuss the disagreement. The attorneys for both parties were present, as well as representatives of plaintiff; also trustees Stephen, Roger, and L.J. Plaintiff agreed to supply a detailed accounting to defendants.

A letter, dated May 11, 1976, setting forth the accounting and accompanied by attached documents was sent to L.J. The facts set forth in the next paragraph were asserted in an affidavit accompanying a motion to set aside a default judgment entered on the instant complaint.

L.J. opened the letter and glanced at its contents; it appeared to set forth the requested information. Without reading the letter, he forwarded it to Stephen at Alice's home in Idaho, where Stephen usually picked up his mail. Stephen was more directly involved in the farming operations and had greater familiarity with the equipment, and L.J. determined the information should have been sent to Stephen. Stephen was occupied with the farming operations in Idaho and did not become aware of the contents of the letter, until after the default judgment was entered.

The letter consisted of two pages of single spaced type, reciting numerous figures and references to the attached documents. Towards the bottom of the second page, appeared the following:

I called Richard Thornley and he indicated that he no longer represents you. It is for this reason that I am writing directly. If you have any questions with regard to the enclosed schedules, please feel free to call me. Otherwise, we take you at your word that you will pay the proper amounts which you owe to E. C. Olsen Company.

With regard to the Complaint which we have filed, we have extended additional time for answering our Complaint to Mr. Thornley in hopes that we can get this matter resolved. We want to reach a resolution of this matter or receive an Answer to our Complaint on or before May 20th, 1976. Otherwise, we will have no alternative but to take a Default Judgment against you.

We hope to be able to settle this matter amicably.

I would appreciate it if you would get in touch with me directly so that I will know your intentions.

> With kind regards,
> J. CRAIG CARMAN & ASSOCIATES, P. C.
> J. Craig Carman
> Attorney at law

JCC:dh
cc: Mr. Kent Whitney
E. C. OLSEN COMPANY

On June 11, 1976, a default judgment was entered against defendants. Upon notice of entry of judgment, defendants employed new counsel, who filed a motion to vacate the judgment on July 6, 1976.

In their affidavit defendants further stated they assumed their first attorney had filed an answer, and it was not until after this attorney had withdrawn and their default entered they became aware that no responsive pleading had been filed. The affiants further expressed their belief that although there might be some indebtedness, the amount was in dispute. Also they had valid offsets, and counterclaims for damages, because of defective materials and workmanship which damages were expected to exceed plaintiff's claim.

In addition to the motion and affidavit, second defense counsel filed an answer and counterclaim, setting forth in detail asserted breaches by plaintiff and the damages sustained, in the sum of $50,000.

The motion to set aside the default judgment was predicated on Rule 60(b)(1), U.R. C.P., viz., by reason of "mistake, inadvertence, surprise, or excusable neglect."

Defendants vigorously assert the denial of their motion to vacate the default judgment constituted an abuse of discretion.

Although a trial court is endowed with considerable latitude of discretion in granting or denying a motion to vacate a final judgment, it cannot act arbitrarily.

> . . . it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to appear, and timely application is made to set it aside.[1]

Because an application to set aside a default is equitable in nature and is addressed to the conscience of the court, all the attendant circumstances should be considered. Relief in doubtful cases generally will be granted so a party may have a hearing.[2]

A review of the record here establishes sufficient facts to sustain the reasons set forth in subsection (1) of Rule 60(b) U.R. C.P. Defendants did not know of the agreement between counsel for an extension of time in which to file a responsive pleading. Defendants had acted with dispatch in engaging counsel, and could properly assume he had filed an answer. Their only source of knowledge to the contrary was the concluding statement in the letter from plaintiff's counsel. This letter dealt primarily with other subject matter, and

---

1. *Mayhew v. Standard Gilsonite Company,* 14 Utah 2d 52, 54, 376 P.2d 951, 952 (1962).

2. *Board of Education of Granite School District v. Cox,* 14 Utah 2d 385, 384 P.2d 806 (1963).

defendants offered a reasonable explanation of their inadvertence. Another factor, which merits consideration within the context of the circumstances is the number of defendants involved and who was their representative. In this regard, name confusion was infused into the proceedings. Plaintiff alleged one trustee to be the agent who entered into the transaction; but it served a second trustee; and yet sent a letter expressing its intention to take a default judgment, to a third. Defendants claimed the letter should have been directed to a fourth trustee, who had the most direct knowledge concerning the delivery and installation of the equipment. Plaintiff knew of this confusion and that the attorney, who had represented all of the defendants, had withdrawn.

Under the facts herein, the unilateral termination of the extension buried in the letter dealing with the accounting, did not give defendants adequate notice of the status of the action. Their failure to respond constituted excusable neglect, and the trial court abused its discretion in denying their motion to vacate the default judgment.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.